UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LaTresa Cameron, *et al.*,<br>          *Plaintiffs*, | Civil No. 3:10cv1521 (JBA) |
|           *v.* | |
| Olin Corporation, *et al.*,<br>          *Defendant*. | January 16, 2012 |

RULING ON MOTIONS FOR SUMMARY JUDGMENT

On August 6, 2010, Plaintiffs LaTresa Cameron, Reeves Cameron, Wilson Cameron, and Clay Cameron filed a Complaint against Defendants Olin Corporation ("Olin"), the Winchester Repeating Arms Company ("WRAC"), and U.S. Repeating Arms Company, Inc. ("USRAC") in Connecticut Superior Court for the Judicial District of New Haven, claiming violations of the Connecticut Product Liability Act ("CPLA"), loss of consortium, bystander emotional distress, and violations of the Connecticut Unfair Trade Practices Act ("CUTPA") due to Defendants' alleged placing in the stream of commerce a rifle in defective and unreasonably dangerous condition, which discharged and killed Jeffery Cameron. Defendants removed the case to federal court on September 14, 2010.  USRAC was terminated from this case on agreement on April 11, 2011.  WRAC moves [Doc. # 60] for summary judgment, and both Defendants Olin and WRAC move [Doc. # 91] for summary judgment in their favor on all claims as barred by the Texas products liability statute of repose.  For the reasons that follow, WRAC's motion for summary judgment will be granted, and Defendants' motion for summary judgment on all claims will be denied.

I.      Undisputed Facts

A.      Facts Relevant to Defendants' Motion for Summary Judgment on All
        Claims

On September 17, 2008, at the Welder Ranch in Calhoun County, Texas, Jeffrey
Cameron was shot in the head while handling his Winchester Model 94 level action rifle,
serial number 3292252 (the "Rifle") and died shortly thereafter.  (Rule 26(f) Report, Ex. B
to Defs.' Loc. R. 56(a)1 Stmt. [Doc. # 92] at 7–8; Matthew Cooley Dep., Ex. D to Defs.' 56(a)1
Stmt. at 7:11–22.)  Olin manufactured the Rifle in Connecticut and sold it in 1970.  (Rule
26(f) Report at 7–8; Ambrosi Aff., Ex. K to Defs.' 56(a)1 Stmt. ¶¶ 8–9.)  Jeffrey Cameron's
father purchased the Rifle in Houston, Texas in 1970, and Jeffrey Cameron and his father
owned and used the Rifle in Texas until the 2008 shooting.  (Rule 26(f) Report at 8; LaTresa
Cameron's Answers to Interrogs., Ex. E–14 to Defs.' 56(a)1 Stmt. at 6.)

B.      Facts Relevant to WRAC's Motion for Summary Judgment

Amy Watson, Paralegal for Olin, states in an affidavit that WRAC, a wholly–owned
subsidiary of Olin incorporated under the laws of Connecticut in 1938, "has never been
engaged in the design, formulation, manufacture, construction, assembly, preparation,
installation, testing, warnings, instructions, marketing, packaging, labeling, sale, lease or
distribution of firearms since its formation in 1938."  (Watson Aff., Ex. C to WRAC's Loc.
R. 56(a)1 Stmt. [Doc. # 62] ¶¶ 4–5.)  Ms. Watson continues: "At all times relevant to [this]
lawsuit, Olin has maintained WRAC as a Connecticut corporation for the sole purpose of
protecting the Winchester name by preventing another person or entity from incorporating
a company with that name in the State of Connecticut."  (*Id.* ¶ 6.)

2

Theodore Zimmerman, deputy general counsel for Olin and corporate secretary for WRAC, testified during his deposition that WRAC "is and has been maintained for many years in order to prevent . . . another company from incorporating using that same name." (Zimmerman Dep., Ex. B to Pls.' Loc. R. 56(a)2 Stmt. [Doc. # 82] at 16:11–15.)  Mr. Zimmerman also testified that, based on his review of corporate minutes books, he understood that WRAC "never conducted any business and that it was maintained for the name placeholder purpose."  (*Id.* at 18:24–20:6.)  He agreed with the statements in Ms. Watson's affidavit and was not aware that WRAC ever had any employees other than its officers and directors.  (*Id.* at 22:16–25:23.)  Peter Kaskell, who was at one time the assistant secretary for WRAC, similarly testified during his deposition that WRAC "was just a shell company."  (Kaskell Dep., Ex. C to Pls.' 56(a)2 Stmt. at 9:18–21.)[1]

Plaintiffs support their claim that WRAC designed the Model 94 Rifle in 1894 by reference to a website they claim is the "Winchester Repeating Arms Website," which WRAC maintains is owned and operated by Browning, using the Winchester name under a license from Olin (Costello Aff., Ex. D to WRAC's Reply ¶¶ 4–7), and to several books written by third parties.  Each of these sources attributes the Model 94 Rifle design to "Winchester" and none discusses the WRAC entity incorporated in Connecticut in 1938. (*See* Website Timeline, Ex. A–7 to Pls.' 56(a)2 Stmt. at 1; Houze, Winchester Repeating

---

[1] Plaintiffs claim in their 56(a)2 Statement that neither Mr. Zimmerman nor Mr. Kaskell "could provide any basis for Ms. Watson's statements in paragraphs 5 and 6 of her affidavit. (Pls.' 56(a)2 Stmt. at 2.)  Mr. Zimmerman testified that he did not know what Ms. Watson knew about why WRAC was incorporated (Zimmerman Dep. at 15:20–16:1), and Mr. Kaskell testified that he did not know anything about the history of WRAC (Kaskell Dep. at 9:8–10.)  However, both Mr. Zimmerman and Mr. Kaskell corroborated Ms. Watson's statements that WRAC existed only to protect the Winchester name and was not involved in the manufacture or sale of any products.

Arms Company: Its History & Development from 1865 to 1981, Ex. A–8.4 to Pls.' 56(a)2
Stmt. at 129–32; Henshaw, The History of Winchester Firearms, Ex. 9 to Pls.' 56(a)2 Stmt.
at 38–43.)  Plaintiffs also point to U.S. Patent No. 524,702, which was granted to John M.
Browning, assignor to Winchester Repeating Arms Company ('702 Patent, Ex. A–4 to Pls.'
56(a)2 Stmt.), but provide no factual support for the suggestion that this Winchester
Repeating Arms Company is the same entity as the WRAC that was incorporated in
Connecticut in 1938 and is named as a Defendant in this case.

II.     Defendants' Motion for Summary Judgment on All Claims[2]

        Defendants move for summary judgment in their favor on all of Plaintiffs' claims,
arguing that the Texas fifteen–year statute of repose for products liability actions, Tex. Civ.
Prac. & Rem. Code Ann. § 16.012(b), time–bars Plaintiffs' claims because the Rifle was sold
by Olin more than fifteen years prior to the commencement of this case.  Plaintiffs argue that
the Texas statute of repose, under Connecticut choice of law rules, does not apply to this case
and their claims are accordingly not time–barred.

        The parties agree that Connecticut choice of law rules apply to this case.  Because this
is a diversity case in federal court in Connecticut, the Court must apply the choice of law
rules that would be applied by the Connecticut Supreme Court.  *See Klaxon Co. v. Stentor*

---

[2] "Summary judgment is appropriate where, construing all evidence in the light most
favorable to the non-moving party," *Pabon v. Wright*, 459 F.3d 241, 247 (2d Cir. 2006), "the
pleadings, the discovery and disclosure materials on file, and any affidavits show that there
is no genuine issue as to any material fact and that the movant is entitled to judgment as a
matter of law," Fed. R. Civ. P. 56(c)(2). An issue of fact is "material" if it "might affect the
outcome of the suit under the governing law," and is "genuine" if "a reasonable jury could
return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477
U.S. 242, 248 (1986). "Unsupported allegations do not create a material issue of fact."
*Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

*Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  The parties also agree that the applicability of the Texas statute of repose must be determined by deciding whether it is procedural or substantive; if it is procedural, the forum's law applies, if it is substantive, the Court must determine whether Texas substantive law or Connecticut substantive law applies to this case. *See Baxter v. Sturm, Ruger & Co.*, 230 Conn. 335, 347 (1994).

Under Connecticut law, statutes of limitation are generally considered procedural; however, in cases where the cause of action did not exist at common law and the foreign statute of limitation is "so interwoven with . . . the cause of action as to become one of the congeries of elements necessary to establish the right," the foreign statute of limitations is considered substantive and properly applies to the case.  *Id.* at 339–40; *see also Norton v. Michonski*, 368 F. Supp. 2d 175, 179 (D. Conn. 2005).  "Thus, for the limitation period of the lex loci to apply, the underlying right upon which the lawsuit is based must not have existed at common law.  Otherwise the limitation period established by the lex fori governs." *Baxter*, 230 Conn. at 340.  Put another way, "[a] statute of limitations is 'substantive' with respect to a right or claim that was not present at common law."  *Blue Cross of Cal. v. SmithKline Beecham Clinical Labs., Inc.*, 108 F. Supp. 2d 116, 123 n.3 (D. Conn. 2000).

Defendants seek to apply the statute of repose for Texas products liability actions. Products liability is a cause of action that existed at common law in Texas.  *See Rodriguez v. Christus Spohn Health Sys. Corp.*, 628 F.3d 731, 735 (5th Cir. 2010) ("Title 4 of the [Texas] Civil Practice and Remedies Code . . . codifies, or makes statutory, many traditional common law torts, such as . . . Products Liability.").  Applying the Connecticut Supreme Court's decision in *Baxter*, a statute of repose for a products liability action, which has its origin in the common law, is procedural and thus does not apply.  230 Conn. at 347 (Oregon statute

5

of repose for products liability, a cause of action available at Oregon common law, was procedural and thus did not serve to time–bar plaintiff's claims); *cf. Feldt v. Sturm, Ruger & Co.*, 721 F. Supp. 403, 406 (D. Conn. 1989) (Georgia statute of repose for products liability, which "created a strict liability unknown at common law," applied to the case and time–barred plaintiff's claim).

Defendants argue that the Texas statute of repose for products liability is substantive, rather than procedural, because wrongful death actions were not available at common law in Texas, and thus, because § 16.012 permits recovery for wrongful death, its statute of repose is substantive.  (Mem. Supp. [Doc. # 93] at 7–9.)  However, although § 16.012(a) allows for a products liability suit seeking to recovery damages for wrongful death, this Texas statutory provision does not create the right to recover for wrongful death previously unavailable at common law; that right is created by the Texas Wrongful Death Act, codified at Tex. Civ. Prac. & Rem. Code Ann. § 71.002.[3]  The statute of limitations for the Texas Wrongful Death Act is contained in a distinct statutory provision, Tex. Civ. Prac. & Rem. Code Ann. § 16.003, which provides: "A person must bring suit not later than two years after the day the cause of action accrues in an action for injury resulting in death.  The cause of action accrues on the death of the injured person."  Therefore, two separate limitations periods cover products liability actions seeking damages for wrongful death under Texas law, the products liability statute of repose and the wrongful death statute of limitation.

---

[3] Tex. Civ. Prac. & Rem. Code Ann. § 71.002(a) reads: "An action for actual damages arising from an injury that causes an individual's death may be brought if liability exists under this section."  Section 71.002(b) reads: "A person is liable for damages arising from an injury that causes an individual's death if the injury was caused by the person's or his agent's or servant's wrongful act, neglect, carelessness, unskillfulness, or default."

Although the Texas products liability statute allows for damages for wrongful death, it neither creates the right to recover for wrongful death, nor is its statute of repose interwoven with the Texas Wrongful Death Act.

Defendants' counsel nonetheless claimed at oral argument that the Texas products liability statute of repose is expressly incorporated into the Texas wrongful death statute via § 16.012(a), and is therefore substantive with respect to products liability actions seeking recovery for wrongful death. He specifically relied on language from *Baxter*: "Under our law, proper characterization of a statute of limitation . . . requires a determination of whether the limitation is directed at the cause of action 'so specifically as to warrant saying that it qualifie[s] the right.'" 230 Conn. at 340 (quoting *Thomas Iron Co. v. Ensign–Bickford Co.*, 131 Conn. 665, 670 (1945); *Davis v. Mills*, 194 U.S. 451, 454 (1903)). For a limitations period to be directed at the cause of action, it need not be contained in the same statute as that which creates the right, so long as it is specifically "directed to the newly–created liability." *Thomas Iron*, 131 Conn. at 670.

The Texas products liability statute of repose contained in Tex. Civ. Prac. & Rem. Code Ann. § 16.012(b) is not specifically directed at the wrongful death actions newly–created by § 71.002 of the Texas code. Although § 16.012(a) allows recovery of damages for wrongful death in products liability actions, § 16.012(b) contains no reference to wrongful death, only specifying that "a claimant must commence a products liability action against a manufacturer or seller of a product before the end of 15 years after the date of the sale of the product by the defendant." This section is specifically directed at products liability, a cause of action that existed at Texas common law. *See Rodriguez*, 628 F.3d at 735.

7

In cases where statutes of limitations or repose have been found to be substantive, the relevant statute created a new statutory right that was not available at common law.  *See SmithKline Beecham*, 108 F. Supp. 2d at 123 n.3 ("Count VI is created by a Pennsylvania statute, and its limitations period is 'substantive' because the statute gives insurers new 'rights' to seek treble damages and to prove fraud claims by a preponderance of the evidence."); *Feldt*, 721 F. Supp. at 406 ("It appears that the Georgia products liability statute, Ga. Code Ann. § 51-1-11 (1982), created a strict liability unknown at common law.").  Although Texas products liability law allows recovery of damages for wrongful death, it did not create the right to bring a wrongful death action and it recognizes a cause of action for liability that had previously been available at common law.  Its statute of repose is therefore procedural.

Defendants also rely on *DeFourneaux v. Sturm, Ruger & Co.*, 503 F. Supp. 2 (D. Conn. 1980) and this Court's decision in *Stephens v. Norwalk Hosp.*, 162 F. Supp. 2d 36 (D. Conn. 2001), arguing that those cases support their claim that "[w]rongful death statutes and their applicable statutes of limitation are *substantive.*"  (Reply [Doc. # 101] at 4–5 (emphasis in original).)  Defendants are correct that both *DeFourneaux*, 503 F. Supp. at 5–6, and *Stephens*, 161 F. Supp. 2d at 42, found that statutes of limitations for wrongful death statutes were substantive because wrongful death was not a cause of action available at common law.  The court in *DeFourneaux* held that the statute of limitation for the Missouri wrongful death statute was substantive: "the Missouri wrongful death statute of limitations, being part of a right of action which did not exist at common law, is a limitation of liability itself, and not just a limit on remedy."  503 F. Supp. at 5.  In contrast, Plaintiffs' action was timely filed under the Texas Wrongful Death Act and what Defendants here seek to apply is the statute

of repose for products liability; were products liability a right of action not available at common law, it would be "a limitation of liability itself." However, products liability was a right of action available at Texas common law, thus its statute of repose is procedural. The Texas products liability statute of repose therefore does not apply to this case, *see Baxter*, 230 Conn. at 347, and Plaintiffs' claims are not time–barred.

III.    WRAC's Motion for Summary Judgment

WRAC argues that it is entitled to summary judgment in its favor on Plaintiffs' products liability claim because the undisputed facts demonstrate that Plaintiffs cannot prove that WRAC was involved in the design, manufacture, distribution, or supply of the Rifle. (WRAC's Mem. Supp. [Doc. # 61] at 4.) WRAC also argues that it is entitled to summary judgment on Plaintiffs' loss of consortium and bystander emotional distress claims because Plaintiffs cannot recover on their underlying products liability claim and Plaintiffs' CUTPA claim because, again, WRAC had no connection to the allegedly defective product. (*Id.* at 5–7.) Plaintiffs argue that WRAC's motion for summary judgment should be denied because factual questions exist as to whether WRAC was involved in the Rifle's design, manufacture, distribution, or marketing and as to whether the corporate distinction between WRAC and Olin should be disregarded.

Under the CPLA, a "'[p]roduct liability claim' includes all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product." Conn. Gen. Stat. § 52-572m(b). To recover on a CPLA product liability claim, a plaintiff must prove that the defendant was engaged in the business of manufacturing or selling the product at issue. *Potter v. Chicago*

*Pneumatic Tool Co.*, 241 Conn. 199, 214 (Conn. 1997).  Similarly, under Texas law[4] a "'[p]roducts liability action' means any action against a manufacturer or seller for recovery of damages arising out of a personal injury, death, or property damage allegedly caused by a defective product." Tex. Civ. Prac. & Rem. Code Ann. § 82.0001.  In order to recover for products liability under Texas law, a plaintiff must establish that the defendant designed, manufactured, marketed, or sold the product at issue.  *Rodrigues v. Gen. Elec. Corp.*, 204 F. Supp. 2d 975, 976 (E.D. Tex. 2001).

Amy Watson, paralegal for Olin, avers that based WRAC's corporate records, "WRAC has never been engaged in the design, formulation, manufacture, construction, assembly, preparation, installation, testing, warnings, instructions, marketing, packaging, labeling, sale, lease or distribution of firearms since its formation in 1938."[5]  (Watson Aff.

---

[4] WRAC argues that Texas, rather than Connecticut, substantive law applies to this case, however it analyzes the issue of WRAC's involvement with the Rifle under both and argues that under either, Plaintiffs' claims against WRAC cannot survive.

[5] Plaintiffs argue that Ms. Watson's affidavit is not competent summary judgment evidence (Opp'n [Doc. # 80] at 9–12) and move [Doc. # 83] to strike paragraphs five and six of her affidavit.  With respect to paragraph five, Ms. Watson bases her conclusion that WRAC has never been engaged in activities related to the sale and manufacture of firearms on WRAC's corporate records and thus the affidavit complies with Federal Rule of Civil Procedure 56(c)(4) in that it is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated."  Ms. Watson relies in her affidavit on WRAC's corporate minutes, admissible under Federal Rule of Evidence 803(6) as business records and on her personal knowledge as paralegal for Olin.  (Watson Aff. ¶¶ 2–5.)  Plaintiffs' motion to strike is therefore denied as to paragraph five.

In paragraph six, however, Ms. Watson states: "At all times relevant to the above–captioned lawsuit, Olin has maintained WRAC as a Connecticut corporation for the sole purpose of protecting the Winchester name by preventing another person or entity from incorporating a company with that same name in the State of Connecticut." (*Id.* ¶ 6.)  She does not rely on the corporate records in making this statement, as those records do not

¶ 5.)  Theodore Zimmerman, deputy general counsel for Olin and corporate secretary for WRAC, agreed with Ms. Watson, and testified in deposition that based on his review of corporate minutes books, WRAC "never conducted any business and . . . was maintained for the name placeholder purpose." (Zimmerman Dep. at 18:24–20:6.)  Peter Kaskell, former assistant secretary for WRAC, similarly testified in deposition that WRAC "was just a shell company."  (Kaskell Dep. at 9:18–21.)

Plaintiffs argue that despite the evidence that WRAC was not engaged in manufacturing or selling any products, there exist factual questions as to WRAC's involvement in the design, manufacture, distribution, or marketing of the Rifle because several third–party resources and the '702 Patent attribute the design of the Model 94 Rifle to the "Winchester Repeating Arms Company of New Haven, Connecticut" in 1894.  (Opp'n at 12–15.)  However, the "Winchester Repeating Arms Company" that was involved in the original design of the Model 94 Rifle in 1894, was reorganized in 1929 into a newly–formed Delaware corporation, the Winchester Repeating Arms Company of Delaware.  *See Collins v. Olin Corp.*, 434 F. Supp. 2d 97, 99 (D. Conn. 2006).  Considering this reorganization, that Defendant WRAC was organized in Connecticut in 1938, and the undisputed evidence in the record that WRAC exists only as a "placeholder" and has never conducted any business or manufactured or sold any products, Plaintiffs are unable to point to any fact in the record that demonstrates that Defendant WRAC was in any way involved in the manufacture, sale, or marketing of the Rifle.

_____

reflect the purpose for which WRAC exists as a corporation in Connecticut, nor does she have personal knowledge of the motivation behind WRAC's continuing incorporation. Plaintiffs' motion to strike paragraph six of Ms. Watson's affidavit is therefore granted.

At oral argument, Plaintiffs' counsel argued that the corporate records relied upon by Mr. Zimmerman and Ms. Watson and photographs of Winchester ammunition packaging found in the third–party publication "One Hundred Years of Winchester Cartridge Boxes, 1856–1956" rebut WRAC's evidence that it did no business and exists only as a placeholder.  He argued that the corporate records contain the same title as that on '702 Patent—"The Winchester Repeating Arms Company of New Haven, Connecticut"—as do the cartridge boxes, thus giving rise to an inference that the WRAC that generated the corporate records is the same entity as that to which the '702 Patent was assigned and which sold ammunition as late as the 1950s.  The corporate records do not, however, contain the title "The Winchester Repeating Arms Company of New Haven, Connecticut," but instead include the underlined title "The Winchester Repeating Arms Company," below which is contained an address: "275 Winchester Avenue New Haven, Connecticut 06504" or "New Haven, Connecticut 06504."  (*See* Ex. A–1 to Opp'n at 2385–2432.)  Similarly, nowhere does the ammunition packaging contain the full title "The Winchester Repeating Arms Company of New Haven, Connecticut," but instead includes "New Haven, Connecticut U.S.A." below or near "The Winchester Repeating Arms Company."  (*See* Ex. A–10 to Opp'n.)  The use of a geographic location on WRAC's corporate records and images of ammunition packaging does not support a reasonable an inference that WRAC is the same corporate entity that designed the Model 94 Rifle or that continued to market and distribute ammunition into the 1950s.  Plaintiffs are therefore unable to rebut WRAC's evidence that it does no business and exists only as a placeholder.

Plaintiffs ask the Court, if it finds that there is no question of fact as to WRAC's involvement in the manufacture or sale of the Rifle, to pierce the corporate veil and disregard

the corporate distinction between Olin and WRAC because "Olin has always completely owned and controlled [WRAC]." (Opp'n at 15.) However, "it is a fundamental principle of corporate law that the parent corporation and its subsidiary are treated as separate and distinct legal persons even though the parent owns all the shares in the subsidiary and the two enterprises have identical directors and officers." *SFA Folio Collections, Inc. v. Bannon*, 217 Conn. 220, 232 (1991). There is insufficient cause to pierce the corporate veil based on this factual record, and the corporate distinction between WRAC and Olin should not be disregarded.

WRAC is therefore entitled to summary judgment in its favor on Plaintiffs' products liability claim. Because this claim fails, WRAC is also entitled to summary judgment in its favor on Plaintiffs' derivative loss of consortium and bystander emotional distress claims. *See Hopson v. St. Mary's Hosp.*, 176 Conn. 485, 492–96 (1979); *Drew v. William W. Backus Hosp.*, 77 Conn. App. 645, 669–70 (2003).

IV.     Conclusion

For the reasons stated above, Defendants' motion [Doc. # 91] for summary judgment on all claims is DENIED and WRAC's motion [Doc. # 60] for summary judgment is GRANTED.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 16th day of January, 2012.

13